Regalado. Good morning. Our primary contention on appeal is the, what we perceive as the Can you speak up a little bit, please? Yes. Our primary contention on appeal is the defects in the prior deportation proceeding, which was then used as an element of the crime, in the 1326 conviction. And we submit that the basic defect from which everything springs is the erroneous record created by the hearing officer on February 27, 1996. And that was the date that he erroneously represented that he had orally stated the consequences of failing to appear to my client, and that he had provided to him a written notice in Spanish of the consequences of his failure to appear. It's important for our case that all of the INS records in his A file identified Mr. Chavez to the INS as someone who was Spanish speaking. When he showed up for his hearing at which it was continued on February 27, he asked for a Spanish interpreter. At that time, it was by statute required that the INS provide him with a written notice, and he didn't get it. The written notice, excuse me, he got a written notice, but they were required to provide him with a written notice in Spanish. And they didn't do that, and that resulted in exactly, we submit, the kind of prejudice which that written notice was designed to alleviate. What would the written notice in Spanish have done? What would it have said differently? It would have provided to him in Spanish the date that he was to appear, but the difference would be Spanish, that's the only difference. The date on which he would appear was March 12, right? Yes. And how was the word March written out in English? Was it written out M-A-R? Was it written out M-A-R-C-H? Three. I'm sorry, it was written as a three. Yes. And was it written 3-12? Yes. Okay, and if it had been written in Spanish, would it have been written as 12-3? No, that was pointed out, it would have been switched around, yes. It would have been 12-3? It would have been switched around, yes. Okay, but he didn't show up in December. That's true. He showed up on the 14th, and so the text of the warning, had it been in Spanish, wouldn't have changed anything about the way that the date, which was handwritten on the notice. And he was also advised orally in Spanish, so he didn't have any confusion about the month. The confusion was over the day of the month on which he was to appear, and he showed up two days late. The part that he misconstrued was the typewritten portion of that notice. Which you had to look down for, because the part that was handwritten was in much larger writing on a separate line right near the top of the form, including the year and the month. I understand what you're saying, but he wouldn't have made the mistake that he made, misconstruing the, your hearing will not be set earlier than 14 days from the date of this notice, because he would have read that in Spanish and would have realized that that's not... Mr. Chavez never said that he didn't understand. Mr. Chavez said that he made a mistake. He said that... He misread it. That's what he said before the INS. Yes, he misread it, and he said at the very end of that declaration in support of his motion to reopen, that if the hearing officer would grant relief, that in the future he would make sure that his attorney and his wife read the documents so that there would not be any mistakes in the future. In his declaration in support of the motion to dismiss, he specifically set forth that at that time, he did not read English very well. He had been in the United States since he was 10, and he completed through the 9th grade, which would have been 4 or 5 years of schooling in the United States. Yes. He would speak then at least some English, although he clearly has a preference for Spanish, and he's entitled to have an interpreter, and he was entitled to the notice. That was INS's fault. But he's never said that he didn't understand the notice. He just said that he misread it. Well, I've cited the authority that a misunderstanding, at least when you're using an interpreter, is evidence of an incompetent translation. No, but he never said that he misunderstood the oral warning or the oral advice as to when he was to show up for the hearing. That's true. And then he got it in writing, and he says that he misread it in writing because it was handwritten in large letters on a separate line. What he misread was not the handwritten part, Your Honor. He misread – what he misread was the typewritten portion, and he construed the 14 in that paragraph, that your hearing will not be earlier than 14 days from the date of this notice. He misconstrued that as the date that he was supposed to appear. That would not have occurred if he had been given the Spanish notice that the INS was required to give him. He has – well, part of the argument is what we're addressing right now. The other part of the argument is that the INS was required to accurately provide a record when the alien has no attorney present, and the record entries falsely reflect that he was given the Spanish written notice and that he was orally told of the consequences of failure to appear on February 27th. And those false record entries were then relied upon by the hearing officer in determining the merits of the motion to reopen, and then again by the BIA on appeal on the record, when they appealed on the record. And those entries reflected the opposite of the true facts. Instead of the record reflecting that he only spoke – only read Spanish as far as the INS knew, he was only fluent in Spanish, and they gave him an English notice, and that's the reason why he says that he didn't show up at the right time, he made a mistake. And the hearing officer pointed out that this written notice, sir, is the only reminder that you're going to get of the hearing. Instead of the record reflecting that, it reflected the opposite, that he was handed – that he speaks – excuse me, he's literate in Spanish, he was handed a written notice in Spanish, and he was orally advised in Spanish of the consequences of his failure to appear. And that just didn't happen. I'm about a little under a minute. Would you like to save some time for rebuttal? If I may, please. Thank you, counsel. Ms. Ponson. Good morning, Your Honor. Marian Pansa. I think one of the first important things I'd like to clarify for the record is that the appellant has gotten up and made certain accusations about the INS, and for clarification, it was not the INS who was conducting this hearing. It was the Executive Office of Immigration Review. They are a separate agency, so this information of the A-file was not available to them. So there's no – there's absolutely no way that that officer could have known about the appellant's background. There was a translator, a Spanish-language translator, at the proceeding where he was orally advised about the follow-on proceeding? There was, Your Honor. I would like to point out that he was advised orally when he was supposed to appear for the court. Also, the 14-day reference was, as the Court had pointed out, completely separate from the date that he was supposed to attend his hearing. There was no reference to a month around that 14 numerical notation. And I think it's also important to note that the appellant did file motions to reopen and appeals with the Board of Immigration Appeals and never raised this specific issue of the lack of notice with those agencies. So for him to now raise this issue eight years later is, I think, an indication that he missed – I think he misread the notice, not that the fact that he did not receive this notice in Spanish that was handwritten really made a difference. It's also important to note that even if there was an inaccurate record, in order for the appellant to be successful in his claim, he needs to show a prejudice. And there is no prejudice in this case. He had the right to judicial review, to go before the BIA, go back to the immigration judge and the BIA and present these issues. And there was nothing precluding him from doing that. Was there any review by a circuit court of the BIA action? No, Your Honor. Under – what happened during the appellant's case is there were some changes in the law. The appellant is an aggravated felon. And there was a change in the law that went into effect that precluded ninth circuit review at that point. Any circuit, correct? Any circuit, correct. However, he would have had a habeas review available to him if he had wanted to pursue that avenue. At that point in time, the law was such that the – he could have pursued that avenue. It's unclear whether that was available, but – Was there – to your knowledge, was there any effort to seek review, whether by habeas or petition for review of the BIA decision?  I think the other important point for the court to be aware of is there's some representations in the appellant's brief that he is eligible for 212C relief, which is what he ultimately would have been pursuing had he attended that hearing. And at the time on March 12th, he would have been – that relief would have been available to him. However, the law changed on April 23rd of 1996, and that would not have been available to him at that time. The first hearing that he missed was a master calendar hearing. It was a preliminary hearing. It wasn't a hearing for the merits. In all likelihood, what would have happened is he would have attended that hearing, the judge would have reset or rescheduled his hearing at a later date, past the April 23rd deadline, and he would not be eligible for 212C relief. So in the end, even assuming that an erroneous record was created, he was not prejudiced at all. I think the other point I would just like to reiterate is that there were other safeguards in place at the time that this appellant alleges that he never got notice of his hearing. He was told two times in Spanish that he received notice – of notice of the hearing and when it was. He was given written notice of the hearing and the consequences of failure to appear at his previous hearing, and he was told in Spanish that there was going to be a Spanish version available to him if he wanted it, and he elected not to take that notice. So on all counts, Your Honor, there's no violation of due process here because there are other procedural safeguards in place to cover that. And secondly, even if there was a violation of due process, there's no prejudice to him because, first of all, he had other avenues of judicial review available to him that could have called attention to this problem. And secondly, it's highly unlikely at that point in time that 212C relief would have been available to him. We understand your argument. Thank you very much. We'll hear a rebuttal. Mr. Quinlan? I think you have about a minute and a half. I disagree that waiver of deportation under 212C relief was unavailable at any time to Mr. Chavez. St. Cyr v. INS says that it is for people who plead out. And this Court's, I believe it was the second Magana-Paisano case, said that if the proceedings are initiated before 1996, which happened in this case, then those changes don't apply to the alien's proceedings. So for both of those reasons, number one, his proceeding started in 1995, the end of 1995, and number two, St. Cyr says that he's entitled to apply for waiver of deportation. On the prejudice, we made, down below, we made the same showing of prejudice essentially as made by the defendant in the United States, V. Ubaldo Figueroa, which was included in a 28-J letter that I sent to the Court. Basically, my client married a Bakersfield, California native, a U.S. citizen, and they had three U.S. citizen children. One of them was, I believe, about two years old. The youngest was two years old when he was deported in 1996. And those factors are looked at very closely in determining whether or not relief under 212C is available, primarily looking at the disruption on the family to the non-alien family members. And so we submit that he made a factual showing that he was not only eligible for 212 relief, but he may well have gotten it. I think your time has expired. I thank you very much. Thank you for your rebuttal argument. Thank both sides for their argument. The case just argued will be submitted for decision and will proceed for the last case on the calendar this morning and this week, United States v. Dietzen. Counsel are present if they'd come forward. Mr. Anthony. Thank you, Your Honor. Good morning. Good morning. David Anthony from the Federal Public Defender's Office on behalf of Christopher Dietzen. In Mr. Dietzen's sentencing hearing, there were disputed issues of material fact as to whether he committed another felony offense.
judges: Lay , Hawkins, Bybee